## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

AFZAL LOKHANDWALA, an Illinois citizen,
AFCO SERVICES, INC.,
BLOOMINGDALE CHICKEN, INC.,
CAROL STREAM CHICKEN, INC.,
CICERO ADDISON CHICKEN, INC.,
FULLERTON CHICKEN, INC.,
PRATT CHICKEN, INC.,
SCHAUMBURG CHICKEN, INC.,
STREAMWOOD CHICKEN, INC.,
all Illinois Business Corporations,

                    Plaintiffs,

   v.

KFC CORPORATION, a Delaware
Corporation,

                Defendant.

## VERIFIED COMPLAINT

The Plaintiffs, Afzal Lokhandwala, AFCO Services, Inc., Bloomingdale Chicken, Inc., Carol Stream Chicken, Inc., Cicero Addison Chicken, Inc., Fullerton Chicken, Inc., Pratt Chicken, Inc., Schaumburg Chicken, Inc., and Streamwood Chicken, Inc., by and through the undersigned attorneys, respectfully state as follows for their Verified Complaint against the Defendant, KFC Corporation.

## THE PARTIES

1.    Plaintiff Afzal Lokhandwala ("Afzal") is a resident of the State of Illinois. Afzal owns and operates eight Kentucky Fried Chicken ("KFC") franchises in the State of Illinois through the following Illinois Business Corporations: AFCO Services, Inc.; Bloomindale Chicken, Inc.; Carol Stream Chicken, Inc.; Cicero Addison Chicken, Inc.; Fullerton Chicken,

Inc.; Pratt Chicken, Inc.; Schaumburg Chicken, Inc.; and Streamwood Chicken, Inc. (collectively the "Plaintiffs" or "Franchisees").

2.     Defendant, KFC Corporation ("Defendant" or "KFCC"), is a Delaware Corporation headquartered in Kentucky. KFCC is a fried chicken restaurant chain founded by Colonel Sanders and is the franchisor of over 20,000 KFC restaurant locations throughout the world.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship among Plaintiffs and Defendant, and the matter in controversy exceeds $75,000.00.

4.     Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391 because Defendant's actions giving rise to Plaintiffs' claims occurred in the Northern District of Illinois, Eastern Division. In addition, Defendant agreed to submit to the jurisdiction of this Court when it executed Addendums to Plaintiffs' franchise agreements in the course of its franchisor-franchisee relationship with Plaintiffs stating that Illinois Courts have jurisdiction and venue in matters concerning Illinois franchisees. To the extent that any provision of any franchise agreement purports to designate jurisdiction or venue outside of the state of Illinois, such provision is void and of no force and effect pursuant to 815 ILCS § 705/4.

## FACTUAL ALLEGATIONS

5.     KFCC operates and grants franchises to operate KFC restaurants in the United States and around the world.

6.     Each KFC franchisee is required to execute one or more franchise agreements.

7.     This action concerns the parties' respective rights and obligations under the applicable franchise agreements, including, specifically, whether Defendant can enforce a policy that will fundamentally change Plaintiffs' business operations, which he has successfully run for 14 years.

8.     A true and correct representative copy of the franchise agreement, and various supplements, addenda and amendments thereto presently in existence for all Franchisees are attached hereto as **Group Exhibit 1**.[1]

9.     In 2015, KFCC amended its franchise agreements with all Plaintiffs. A true and correct copy of the amendment franchise agreement is attached hereto as **Exhibit 2**.

10.     Afzal immigrated to the United States from India in July 1989. He later obtained a green card and became a lawful permanent resident of the United States in 2015 and plans to apply for citizenship in the next few years.

11.     After immigrating to America, Afzal's first job was working as the Assistant Manager at a KFC restaurant on the Southside of Chicago owned and operated by KFCC.

12.     Afzal excelled at the job, and within three months, KFCC promoted him to Manager of the same KFC restaurant. He worked for KFCC as a manager at various KFCC-owned and operated KFC restaurants until 1998.

13.     From 1990 through 1998, KFCC assigned Afzal to manage several corporate restaurants throughout Chicagoland that were struggling and needed assistance with operations and sales. Afzal was regularly acknowledged and rewarded by KFCC for excellence and dedication as an employee.

---

[1] The franchise agreement, supplements, addenda and amendments that Plaintiffs entered into with Defendant are the same for each KFC franchise location and therefore, only one set of documents for one franchise location is attached hereto as Group Exhibit 1.

23.     In 2006, Afzal opened a KFC franchise restaurant through Pratt Chicken, Inc.

24.     In 2010, Afzal opened a KFC franchise restaurant through Carol Stream Chicken, Inc.

25.     In 2012, Afzal saw an opportunity to expand his business into other areas that would be strong markets for the sale of Halal-certified poultry and opened five more KFC franchise restaurants through Bloomindale Chicken, Inc.; Cicero Addison Chicken, Inc.; Fullerton Chicken, Inc.; Schaumburg Chicken, Inc.; and Streamwood Chicken, Inc. These KFC franchise locations are all located within or near Muslim communities.

26.     Afzal executed each franchise agreement, and the various supplements, addenda and amendments thereto with KFCC or its predecessor franchisors as President of each of the foregoing Illinois Business Corporations.

27.     Afzal's foresight regarding the sale of Halal chicken at his KFC restaurants was a hit and his businesses have thrived.  For 14 years, KFCC has permitted and helped Plaintiffs to sell Halal poultry products to KFC customers.

28.     KFCC and its predecessors were aware when Afzal acquired his first KFC franchise restaurant through AFCO Services, Inc. that Afzal is a practicing Muslim.  KFCC and its predecessors were also aware that Afzal intended to sell Halal poultry products to KFC customers.

29.     In fact, KFCC and its predecessors helped Afzal to locate a KFCC approved processor (slaughterhouse) and distributor of Halal poultry products so that he could sell the chicken in his restaurants.

30.     Initially, from 2003 through 2006, Plaintiffs obtained Halal chicken through GoldKist, Inc. in Athens, Georgia, a KFCC approved processor.

5

31. GoldKist processed its Halal chicken for distribution to KFCC franchisees in conformance with Islamic religious standards. The Islamic Society of Washington Area certified GoldKist's chicken on-the-bone product as Halal.

32. In 2006, GoldKist merged with a slaughterhouse called Pilgrim's Pride ("Pilgrim's"). Pilgrim's is a KFCC-approved slaughterhouse and, in fact, ships Halal chicken domestically, as well as internationally to a number of countries in the Middle East and several countries in Asia. Similar to GoldKist, the Islamic Society of Washington Area certifies Pilgrim's chicken as Halal.

33. On April 28, 2006, KFCC confirmed that the sale of Halal chicken by the Franchisees in its KFC restaurants was approved by the company, "...there was some talk about getting SET approval for Halal chicken for Afzal Lokhandwala. It appears that it is an approved product from an approved supplier. Please notify Mr. Lokhandwala and let him know that Halal chicken from GoldKist is okay without a SET." [2]

34. Furthermore, in 2006, KFCC assisted Plaintiffs in advertising the sale of Halal chicken in his KFC franchises through the Chicago Sun Times and WYCC PBS in Chicago.

35. KFCC further helped Plaintiffs find an approved, local distributor of Halal chicken, Rosebud Farms ("Rosebud") in Chicago, Illinois. Plaintiffs placed orders for Halal chicken through Rosebud who obtained the chicken directly from Pilgrim's and delivered it to Plaintiffs' KFC franchise locations for 14 years, from March 2003 through March 2017.

36. Franchisees handle and prepare the Halal chicken sold in its KFC restaurant locations in accordance with Islamic religious standards.

---

[2] SET refers to a menu exception, which are items sold in KFC stores that contain a non-standard ingredient or serve a non-standard product.

37.     Local religious leaders frequent Franchisees' restaurants and have routinely confirmed that they follow Islamic religious standards in handling and preparing Halal chicken products.

38.     The fact that Franchisees purchase Halal chicken that conforms to Islamic religious standards from a KFCC approved processor, and maintain those standards in the storage, handling and preparation of Halal chicken on-the-bone at their restaurants is known throughout the Muslim community in the greater Chicago metropolitan area. Thousands of Muslims within the Chicago metropolitan area eat at Plaintiffs' restaurants because they know Afzal is Muslim and the restaurants sell Halal chicken.

39.     In sum, since 2003, KFCC and its predecessors approved Plaintiffs to sell Halal chicken in their KFC franchise locations, assisted Plaintiffs within finding approved processors and distributors of Halal chicken, allowed Plaintiffs to obtain Pilgrim's annual certificate from the Islamic Society of Washington Area confirming that the Pilgrim's is a Halal-certified slaughterer, and allowed Plaintiffs to market and sell Halal chicken to KFC customers.

40.     Despite this long-standing custom, practice and agreement, in October 2016, for the first time, KFCC sent correspondence to Afzal expressing concern that he was advertising and offering for sale Halal chicken in his KFC restaurants.

41.     KFCC further instructed Pilgrim's not to give Afzal a copy of its annual certificate from the Islamic Society of Washington Area confirming that the Pilgrim's is a Halal-certified slaughterer.

42.     Thereafter, with KFCC's knowledge, Afzal continued to offer Halal chicken in his KFC restaurants.

43. In December 2016, KFCC, through its counsel, claimed for the first time that it had a policy, purportedly in place since 2009, prohibiting religious claims about KFC products in franchise restaurants, citing a risk of lawsuits and customer confusion.

44. At no time prior to December 2016, however, did KFCC ever make Afzal aware of this policy.

45. The 2009 policy is not mentioned in any of Plaintiffs' franchise agreements. In fact, the 2009 policy runs directly contrary to what Afzal negotiated with KFCC when purchasing his stores, and runs contrary to representations of KFCC Franchise Director Ken Taft who assisted him with opening his first KFC franchise location and obtaining approval from KFCC for the sale of Halal chicken.

46. Throughout the time Afzal negotiated and closed on the purchase of five additional franchises in 2012, KFCC failed to disclose that it had a policy prohibiting franchisees from making religious claims about KFC food products to KFC customers.

47. KFCC knew at the time these franchise agreements were executed that Afzal's existing stores sold Halal food products to KFC customers.

48. KFCC further knew that Afzal intended to continue to sell Halal food products to KFC customers at the five franchise restaurants he acquired in 2012.

49. In connection with the purchase of the new stores in 2012, KFCC provided Afzal with a Disclosure Statement that did not disclose the existence of the purported policy prohibiting KFC franchisees from making religious claims about KFC food products. This failure is a direct violation of the Franchise Disclosure Act of 1987, 815 ILCS 705/1 *et seq.*

50.    Afzal would not have purchased those five stores had he known about KFCC's policy because it would have directly undercut his business model he successfully ran in the three existing stores and now sought to extend to five additional stores.

51.    Furthermore, notwithstanding its communications in October and December 2016, KFCC continued to allow Plaintiffs to place orders for Halal chicken with its KFCC approved distributor, Rosebud, and receive Halal chicken deliveries to its restaurants.

52.    On March 24, 2017, counsel for KFCC informed counsel for Plaintiffs for the first time that Rosebud had been purchased by another distribution company and would no longer operate a distribution center for KFCC in the Chicago Area thereby imposing a "logistical impediment to Mr. Lokhandwala obtaining halal-designated chicken."

53.    Plaintiffs asked KFCC for assistance in preserving the distribution of Pilgrim's Halal-certified poultry to Plaintiffs' stores, but KFCC (through its attorneys) have instead sought to raise additional hurdles.

54.    For example, Defendant has tried to crack down on Plaintiffs by sending cease and desist letters, and threatening Plaintiffs with a trumped-up charge that their religious claims about KFC products breach the franchise agreements and could result in termination of Plaintiffs' franchises.

55.    The enforcement of the policy will severely damage Plaintiffs' revenues and threatens to put them out of business. Plaintiffs' customer base and business revenue is heavily dependent on the sale of Halal chicken to the Muslim community in Illinois.

56.    Four of the KFC restaurants Afzal owns have a higher volume of Halal chicken sales than the others. Those restaurants are AFCO Services, Inc., Pratt Chicken, Inc., Streamwood Chicken, Inc., and Schaumburg Chicken, Inc.

57.     If KFCC prohibits Plaintiffs from selling and advertising the sale of Halal chicken product at its restaurants, Afzal estimates that he will lose 25% of gross revenues from these four restaurants, approximately $1 million annually.

58.     These four locations will not generate enough revenue to sustain operations if Halal chicken sales are disallowed. Afzal will be forced to close these locations and as a result, approximately 60 to 80 KFC employees will lose their jobs, and four storefronts will likely be left vacant.

59.     At every step, Plaintiffs and their attorneys have sought to reach a reasonable resolution with KFCC that will allow Plaintiffs to continue marketing and selling Halal-certified chicken, but KFCC has resisted Plaintiffs efforts.

60.     For example, in February 2017 KFCC's counsel suggested that Plaintiffs needed to register as dealers of Halal food products with the Illinois Department of Agriculture in order to continue to sell Halal chicken in the restaurants.

61.     Plaintiffs did so.  On April 26, 2017 and May 8, 2017, all eight of Afzal's restaurants became certified as Halal Registered Brokers by the Illinois Department of Agriculture through June 30, 2017. In June 2017, all eight KFC franchise restaurants renewed their certification as Halal Registered Brokers with the Illinois Department of Agriculture for July 1, 2017 through June 30, 2018.

62.     The Halal Food Disclosure Requirements, 8 Ill. Adm. Code § 190.40, require Halal Registered Brokers to post disclosure statements on file with the Illinois Department of Agriculture in a public place, readily accessible to customers.  Furthermore, Halal Registered Brokers must post the name and address of the distributor and slaughter facility in a conspicuous

place. Failure to post the required signage is unlawful under the Consumer Fraud and Deceptive Business Practices Act. *See* 815 ILCS 505/2LL.

63. Pursuant to Section 5.3(h) of the franchise agreements, which requires Plaintiffs to seek approval of KFCC for all signage posted in KFC franchise restaurants, on July 14, 2017, Plaintiffs asked KFCC to approve posting the disclosure statements, including the name and address of Plaintiffs' distributor and processor of Halal chicken.

64. Yet, On July 19, 2017, counsel for KFCC informed counsel for Plaintiff that it would not consent to Plaintiffs' posting of required signage under under Illinois law.

65. KFCC's instruction to Plaintiffs to remove signage they are mandated to post under Illinois law is a violation of Section 5.3(m) of the franchise agreement, which requires Franchisee to comply with applicable laws, ordinances and governmental rules, regulations and other requirements.

66. Counsel for Defendant has repeatedly asserted in communications with counsel for Plaintiffs that KFCC would consider an exception to its alleged policy against religious claims if Plaintiffs would put forth a proposal for doing so that was consistent with the law. But Defendant has not acted in good faith and has instead sought to delay, threaten, and misconstrue Plaintiffs' efforts to appease KFCC.

67. Notwithstanding Plaintiffs' proactive efforts to comply with Illinois law, KFCC continues its attempt to enforce its policy against religious claims and has further asked Plaintiffs' to cease and desist from making religious claims about KFC products and that a failure to do so would result in a breach of the franchise agreement.

68.     Despite the long-standing custom, practice and agreement between the parties for 14 years, KFCC, without justification or substantiation, is now attempting to enforce a policy allegedly in existence since 2009 on Plaintiffs in violation of the franchise agreements.

69.     Upon information and belief, Defendant has not adequately examined the effect that enforcement of their policy would have on Plaintiffs, and are either deliberately enforcing this policy to destroy Plaintiffs' business or are doing so with reckless indifference to the continued viability of Plaintiffs' franchise restaurants.

70.     Counsel for KFCC and counsel for Plaintiffs corresponded between October 2016 and July 2017 concerning the sale of Halal chicken in Plaintiffs stores.  Because those efforts have failed, as a last resort, Plaintiffs seek this Court's intervention.

71.     Specifically, Plaintiffs bring this action seeking a declaration that Defendant's enforcement of the policy is in bad faith, is not commercially reasonably, is not permitted under Plaintiffs' franchise agreements, and are contrary to Defendant's representations in the Disclosure Statement. Further, Plaintiffs seek a preliminary injunction preventing the enforcement of the policy against Plaintiffs, and prohibiting any adverse action by Defendant against Plaintiff for non-compliance with the policy during the pendency of this litigation. Finally, Plaintiffs requests their attorneys fees and costs in bringing this litigation, and to the extent it has implemented the policy, damages for Defendant's breach of contract, including lost revenues.

## COUNT I
### Declaratory Judgment and Injunctive Relief

72.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 71 as if fully set forth herein.

73. Federal Rule of Civil Procedure 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, grant the Court, in cases of actual controversy such as this one, the power to issue judgments declaring the rights and other legal relations of any interested party, whether or not further relief is or could be sought, in order to resolve actual controversies before they ripen into a violation of law or breach of a contractual duty and to avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one actions the rights and obligations of litigants.

74. An actual controversy has arisen and presently exists between Plaintiffs and Defendant regarding whether Defendant has the contractual right to enforce a policy on Plaintiffs.

75. Furthermore, assuming *arguendo* that Defendant has the right to enforce the policy against Plaintiffs, there is an actual controversy as to whether Defendant has acted reasonably and in good faith in doing so.

76. Plaintiffs have a legally protectable interest at stake in resolving this controversy consisting of a pecuniary interest directly at issue and subject to immediate or prospective relief.

77. This judicial determination is necessary, appropriate, and ripe at this time so that the parties may resolve this ongoing dispute.

78. All parties having a direct interest in this matter are properly joined herein.

79. Plaintiffs have no adequate remedy at law available to otherwise resolve this matter.

80. Plaintiffs stand to suffer imminent and irreparable injury through the loss of 25% of its revenue ($1 million annually) and/or the closure of four of its eight KFC franchise restaurants if Defendant is permitted to enforce the policy against Plaintiff. Defendant has also

threatened Plaintiffs with violating the franchise agreement if they do not cease and desist from acting contrary to the policy.

81.     Plaintiffs stand to suffer imminent and irreparable injury through non-compliance with Illinois law, as failure to comply with the requirements of the Halal Food Act may constitute a Class B misdemeanor, 410 ILCS 637/10.

82.     Plaintiffs are likely to succeed on the merits of this claim as their franchise agreements with Defendant, and the Disclosure Document Afzal relied on in deciding to open five additional KFC franchises in 2012, does not state that Defendant had a policy in existence since 2009 which prohibits franchisees from making religious claims about KFC products.

83.     Further, Plaintiffs and Defendant have a long-standing custom, practice and agreement between them for the past 14 years that permitted Plaintiffs to sell Halal chicken in Plaintiffs' restaurants from KFCC approved processors to customers.

84.     The balance of hardships favors Plaintiffs. If Plaintiffs are forced to comply with the policy, they stand to suffer significant financial losses and/or lose established business and goodwill. If Plaintiffs do not comply with the policy, Defendant will claim that Plaintiffs have breached the franchise agreement.

85.     Defendant will suffer little, if any, harm if Plaintiff is permitted during the pendency of this lawsuit to operate as it has done so for the past 14 years with explicit permission, approval and assistance of KFCC.

86.     Permitting Plaintiff to continue operating as it has for the last 14 years without being in violation of the franchise agreement and in compliance with Illinois law during the pendency of this lawsuit would be in the public interest.

WHEREFORE, Plaintiffs, respectfully request that the Court enter judgment in its favor and against Defendant and grant Plaintiffs the following relief:

A.   Enter an Order of declaratory judgment that Plaintiffs' franchise agreements with Defendant do not permit Defendant to enforce a policy precluding Plaintiffs from marketing and selling Halal chicken;

B.   Enter an Order of declaratory judgment that Defendant violated Section 5 of the Illinois Franchise Disclosure Act, 815 ILCS 705/5, by failing to provide Plaintiffs with an effective disclosure statement;

C.   Enter an Order of declaratory judgment that Defendant violated Section 6 of Illinois Franchise Disclosure Act, 815 ILCS 705/6, by failing to disclose the existence of a policy prohibiting KFC franchisees from making religious claims about KFC food products;

D.   Enter an Order of declaratory judgment that Defendant by virtue of its promises and its actions over the past 14 years has approved Plaintiffs to sell and market Halal chicken in its existing KFC franchise locations;

E.   Enter an Order of declaratory judgment that Plaintiffs are not required to adopt or otherwise comply with Defendant's policy under applicable law and/or the franchise agreements;

F.   Enter an Order of declaratory judgment that Plaintiffs' are allowed to sell and market the sale of Halal chicken under the franchise agreement;

G.   Enter an Order of declaratory judgment that Plaintiffs' are required to display signage required under the Halal Food Act, 410 ILCS 637, for registered dealers of Halal food products;

H.   Enter an Order of declaratory judgment that Defendant violated Section 2 of the Illinois Consumer Fraud and Deceptive Trade Practices Act;

I.   Enter a temporary, preliminary and permanent injunction preventing Defendant from enforcing its policy precluding Plaintiffs from marketing and selling Halal chicken;

J.   Enter a temporary, preliminary and permanent injunction preventing Defendant from interfering with or impeding Plaintiffs ability to obtain a copy of Pilgrims' annual certificate from the Islamic Society of Washington Area confirming that Pilgrim's is a Halal-certified slaughterer;

K.   Enter a temporary, preliminary and permanent injunction preventing Defendants from withholding or denying authorization for Plaintiffs to display signage concerning Halal food as required by the Halal Food Act, 410 ILCS 637; and

L.   Enter a temporary, preliminary and permanent injunction preventing Defendant from terminating Plaintiffs' franchise agreements, or otherwise taking any adverse action against Plaintiffs during the pendency of this ligation due to their marketing and sale of Halal chicken or displaying the signage required by the Halal Food Act, 410 ILCS 637.

## COUNT II
### Breach of Contract

87.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 71 as if fully set forth herein.

88.   Section 5.3(m) of the franchise agreement between Plaintiffs and Defendant provides: "The Outlet and its business will comply with applicable laws, ordinances and governmental rules, regulations and other requirements, including but not limited to health and

sanitation requirements, and that KFC is advised promptly in the event of a conflict between this requirement and any other requirement in or pursuant to this Agreement."

89.     Section 5.3(s) provides: "Franchisee will strictly comply with all *reasonable specifications* deemed appropriate by KFC with respect to ingredients, product groupings, storage and handling, method of preparation and service, weight and dimensions of products served, and standards of cleanliness, health and sanitation." (Emphasis added.)

90.     Section 5.3(t) provides: "Franchisee will, at KFC's direction, cease using any ingredients or withdraw from supply in the Outlet, any Approved Product or any other food, beverage, product or service, which KFC determines in its *reasonable discretion*: (i) does not conform or no longer conforms with KFC's quality standards, controls or specifications for food, beverages, products or services; or (ii) may be a health or safety risk or may adversely impact the brand image of KFC. In such case, Franchisee must immediately cease using any ingredients or withdraw any food, beverages or products from sale or supply when required to do so by KFC." (Emphasis added.)

91.     KFCC's instruction to Plaintiffs to remove signage they are mandated to post under Illinois law is a violation of Section 5.3(m) of the franchise agreement, as it requires Franchisee to comply with applicable laws, ordinances and governmental rules, regulations and other requirements.

92.     KFCC has breached Section 5.3(s) of the franchise agreement by failing to provide *reasonable specifications* for ingredients, product groupings, storage and handling, method of preparation and service, weight and dimensions of products served, by:

     a.     Interfering with Plaintiffs ability to obtain Halal chicken despite the fact it is an approved product (ingredient) that KFCC allowed Plaintiffs to purchase and sell in its restaurants for the past 14 years;

b.  Interfering with Plaintiffs ability to display signage required under Illinois law despite the fact that it has allowed Plaintiffs to sell Halal chicken as an approved product in its restaurants for the past 14 years;

c.  Enforcing an alleged policy that prohibits religious claims about KFC products despite the fact that KFCC has allowed Plaintiffs to sell Halal chicken as an approved product from an approved processor in its restaurants for the past 14 years; and

93.  KFCC has breached Section 5.3(t) of the franchise agreement by taking actions designed to cause Plaintiffs to stop marketing the sale of Halal chicken in their restaurants, without exercising any reasonable discretion, when in fact KFCC knows that the Halal chicken sold in Plaintiffs' restaurants comes from a KFCC approved processor that is certified by the Islamic Society of Washington Area as slaughtering poultry in accordance with Islamic religious standards.

WHEREFORE, Plaintiffs, respectfully request that the Court enter judgment in its favor and against Defendant and grant Plaintiffs the following relief:

A.  Enter a temporary, preliminary and permanent injunction preventing Defendant from enforcing its policy precluding Plaintiffs from marketing and selling Halal chicken;

B.  Enter a temporary, preliminary and permanent injunction preventing Defendant from interfering with or impeding Plaintiffs ability to obtain a copy of Pilgrims' annual certificate from the Islamic Society of Washington Area confirming that Pilgrim's is a Halal-certified slaughterer;

C.  Enter a temporary, preliminary and permanent injunction preventing Defendants from withholding or denying authorization for Plaintiffs to display signage concerning Halal food as required by the Halal Food Act, 410 ILCS 637;

D.     Enter a temporary, preliminary and permanent injunction preventing Defendant from terminating Plaintiffs' franchise agreements, or otherwise taking any adverse action against Plaintiffs during the pendency of this ligation due to their marketing and sale of Halal chicken or displaying the signage required by the Halal Food Act, 410 ILCS 637; and

E.     All other additional relief this Court deems equitable and just.

**COUNT II**
**Promissory Estoppel**

94.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 71 as if fully set forth herein.

95.     Afzal, as President of the Franchisees, relied on promises from KFCC, its predecessors, and KFCC agents that he could sell Halal chicken in franchise restaurants in making the decision to enter into a franchise agreement with KFCC and invest over $1,600,000 to obtain his first KFC franchise restaurant (AFCO Services, Inc.).

96.     Afzal relied on subsequent promises from KFCC, its predecessors and agents that he could continue to sell Halal chicken in franchise restaurants in investing millions of dollars into acquiring and opening of seven additional KFC franchise restaurants between 2006 and 2012.

97.     Afzal further relied on actions of KFCC taken in conformity with its promises by finding an approved KFCC processor of Halal chicken and an approved KFCC distributor to deliver Halal chicken to Plaintiffs' eight KFC franchise restaurants.

98.     KFCC now refuses to assist Afzal in obtaining an uninterrupted supply of Halal chicken, when it has permitted Plaintiffs to do so for the past 14 years.

99.     Despite the long-standing custom, practice and agreement between the parties for 14 years, KFCC, without justification or substantiation, is now attempting to enforce a policy allegedly in existence since 2009 on Plaintiffs in violation of the franchise agreements.

100.    KFCC's actions constitute a breach of the promises made by KFCC and detrimentally relied upon by Plaintiffs, where Plaintiffs have been placing orders for Halal chicken products from a KFCC authorized distributor for more than 13 years.

101.    Defendant has subsequently begun to enforce its policy against religious claims, sending out cease and desist communications to counsel for Plaintiffs asserting that Plaintiffs will breach the franchise agreement with KFCC unless Plaintiffs cease making religious claims about KFC products.

WHEREFORE, Plaintiffs, respectfully request that the Court enter judgment in its favor and against Defendant and grant Plaintiffs the following relief:

A.      Enter a temporary, preliminary and permanent injunction preventing Defendant from enforcing its policy precluding Plaintiffs from marketing and selling Halal chicken;

B.      Enter a temporary, preliminary and permanent injunction preventing Defendant from interfering with or impeding Plaintiffs ability to obtain a copy of Pilgrims' annual certificate from the Islamic Society of Washington Area confirming that Pilgrim's is a Halal-certified slaughterer;

C.      Enter a temporary, preliminary and permanent injunction preventing Defendants from withholding or denying authorization for Plaintiffs to display signage concerning Halal food as required by the Halal Food Act, 410 ILCS 637;

D.     Enter a temporary, preliminary and permanent injunction preventing Defendant from terminating Plaintiffs' franchise agreements, or otherwise taking any adverse action against Plaintiffs during the pendency of this ligation due to their marketing and sale of Halal chicken or displaying the signage required by the Halal Food Act, 410 ILCS 637; and

E.     All other additional relief this Court deems equitable and just.

## COUNT IV
### Violations of the Illinois Franchise Disclosure Act of 1987

102.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 71 as if fully set forth herein.

103.     Under the Illinois Franchise Disclosure Act of 1987 ("IFDA"), it is unlawful to sell a franchise without providing the prospective franchisee with an effective disclosure statement. 815 ILCS 705/5(2).

104.     Furthermore, under IFDA, it is a fraudulent practice in connection with the offer or sale of any franchise in Illinois for any person, directly or indirectly, to: (1) omit to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading, or (2) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. 815 ILCS 705/6(b) and (c).

105.     In 2012, Afzal executed franchise agreements with KFCC as President of Bloomindale Chicken, Inc., Cicero Addison Chicken, Inc., Fullerton Chicken, Inc., Schaumburg Chicken, Inc., and Streamwood Chicken, Inc.

106. At the time these franchise agreements were executed, KFCC failed to notify Plaintiffs of the existence of a policy (allegedly in existence since 2009) that prohibited franchisees from making religious claims about KFC food products to KFC customers.

107. KFCC knew at the time these franchise agreements were executed that Plaintiffs stores sold Halal food products in its KFC franchise restaurants to KFC customers.

108. KFCC provided Afzal with a Disclosure Statement that did not conform to the requirements of IFDA because it failed to disclose the existence of a policy prohibiting KFC franchisees from making religious claims about KFC food products.

109. KFCC knew, in 2012, that the sale of Halal food products was a substantial portion of sales at Afzal's existing KFC restaurant locations and was integral to the overall success of those locations and that Afzal intended to sell Halal food products from the new restaurant locations.

110. KFCC violated Sections 5 and 6 of IFDA through the foregoing omissions.

111. Section 26 of IFDA imposes liability on any person who sells a franchise in violation of its requirements, and creates a private right of action by franchisees for recovery of damages, costs and attorney's fees.

WHEREFORE, Plaintiffs, respectfully request that the Court enter judgment in its favor and against Defendant and grant Plaintiffs the following relief:

A.     Enter a temporary, preliminary and permanent injunction preventing Defendant from enforcing its policy precluding Plaintiffs from marketing and selling Halal chicken;

B.     Enter a temporary, preliminary and permanent injunction preventing Defendant from interfering with or impeding Plaintiffs ability to obtain a copy of Pilgrims'

annual certificate from the Islamic Society of Washington Area confirming that Pilgrim's is a Halal-certified slaughterer;

C.     Enter a temporary, preliminary and permanent injunction preventing Defendants from withholding or denying authorization for Plaintiffs to display signage concerning Halal food as required by the Halal Food Act, 410 ILCS 637;

D.     Enter a temporary, preliminary and permanent injunction preventing Defendant from terminating Plaintiffs' franchise agreements, or otherwise taking any adverse action against Plaintiffs during the pendency of this ligation due to their marketing and sale of Halal chicken or displaying the signage required by the Halal Food Act, 410 ILCS 637;

E.     Attorneys fees and costs incurred in bringing and prosecuting this action; and

F.     All other additional relief this Court deems equitable and just.

### COUNT V
### Violation Of The Illinois Consumer Fraud And
### Deceptive Trade Practices Act

112.    The Franchisees repeat and reallege the allegations set forth in Paragraphs 1 through 71 as if fully set forth herein.

113.    Federal Regulations promulgated under the Federal Franchise Disclosure Act require that a franchisor disclose any franchisor-imposed restrictions or conditions on the goods and services that a franchisee may sell, any obligation on the franchisee to sell only goods or services approved by the franchisor, and whether the franchisor has the right to change the types of authorized good or services and whether there are limits on the franchisor's right to make changes. 16 CFR §436.5(q), Item 17.

114.    Similarly, the Illinois Franchise Disclosure Act of 1987 ("IFDA") makes it unlawful to sell a franchise without providing the prospective franchisee with an effective disclosure statement. 815 ILCS 705/5(2).

115.    IFDA also states that it is a fraudulent practice in connection with the offer or sale of any franchise in Illinois for any person, directly or indirectly, to: (1) omit to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading, or (2) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. 815 ILCS 705/6(b) and (c).

116.    Section 2 of the Illinois Consumer Fraud and Deceptive Trade Practices Act states that deceptive acts or practices, including but not limited to, the concealment, omission or suppression of any material fact, with the intent that others rely upon it, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

117.    KFCC's recent actions of unreasonably interfering with Plaintiffs ability to market and sell Halal chicken notwithstanding the long-standing custom, practice and agreement between the parties for 14 years, by attempting to enforce a policy allegedly in existence since 2009 on Plaintiffs is a violation of the franchise agreements is a deceptive trade practice and a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq*.

118.    In addition, KFCC's failure to notify Plaintiffs of the existence of a policy (allegedly in existence since 2009) that prohibited franchisees from making religious claims about KFC food products to KFC customers in 2012, prior to Afzal's decision to enter into five additional franchise agreements with KFCC as President of Bloomindale Chicken, Inc., Cicero

24

Addison Chicken, Inc., Fullerton Chicken, Inc., Schaumburg Chicken, Inc., and Streamwood Chicken, Inc. constitutes a deceptive trade practice and a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq.*

119.   KFCC provided Afzal with a Disclosure Statement that did not conform to the requirements of IFDA because it failed to disclose the existence of a policy prohibiting KFC franchisees from making religious claims about KFC food products.

120.   KFCC knew at the time these franchise agreements were executed that Plaintiffs stores sold Halal food products in its KFC franchise restaurants to KFC customers and therefore, its omission of the fact that it had a policy prohibiting KFC franchisees from making religious claims about KFC food products was the concealment, suppression or omission of a material fact.

121.   KFCC knew, in 2012, that the sale of Halal food products was a substantial portion of sales at Afzal's three existing KFC restaurant locations and was integral to the overall success of those locations, and that Afzal intended to sell Halal food products from the newly acquired restaurant locations.

WHEREFORE, Plaintiffs, respectfully request that the Court enter judgment in their favor and against Defendant and grant Plaintiffs the following relief:

A.   Enter a temporary, preliminary and permanent injunction preventing Defendant from enforcing its policy precluding Plaintiffs from marketing and selling Halal chicken;

B.   Enter a temporary, preliminary and permanent injunction preventing Defendant from interfering with or impeding Plaintiffs ability to obtain a copy of Pilgrims'

annual certificate from the Islamic Society of Washington Area confirming that Pilgrim's is a Halal-certified slaughterer;

C.      Enter a temporary, preliminary and permanent injunction preventing Defendants from withholding or denying authorization for Plaintiffs to display signage concerning Halal food as required by the Halal Food Act, 410 ILCS 637;

D.      Enter a temporary, preliminary and permanent injunction preventing Defendant from terminating Plaintiffs' franchise agreements, or otherwise taking any adverse action against Plaintiffs during the pendency of this ligation due to their marketing and sale of Halal chicken or displaying the signage required by the Halal Food Act, 410 ILCS 637; and

E.      All such further relief that the Court deems equitable and just.

## JURY DEMAND

Plaintiffs hereby demand trial by Jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b)(1).

Dated: July 24, 2017

Respectfully Submitted,

By: ___/s/ Michael K. Goldberg_____
            One of Plaintiffs' Attorneys

Michael K. Goldberg
Jenna E. Milaeger
Goldberg Law Group, LLC
120 S. Riverside Plaza, Suite 1675
Chicago, Illinois 60606
Tel: 312 930-5600
Fax: 312-930-0944
Email: mgoldberg@goldberglawoffice.com
Email: jmilaeger@goldberglawoffice.com

Thomas M. Leinenweber
Justin L. Leinenweber
Leinenweber, Baroni & Daffada, LLC
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60601
Tel: 866-786-3705
Fax: 800-896-2193
Email: thomas@ilesq.com
Email: justin@ilesq.com

## VERIFICATION

The undersigned, Afzal Lokhandwala, declares that he is the President of AFCO Services, Inc., Bloomingdale Chicken, Inc., Carol Stream Chicken, Inc., Cicero Addison Chicken, Inc., Fullerton Chicken, Inc., Pratt Chicken, Inc., Schaumburg Chicken, Inc., and Streamwood Chicken, Inc., and that he has read the foregoing Verified Complaint and that the factual statements contained therein are true and correct to the best of his knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

By: _____
    Afzal Lokhandwala

Date: _____7 - 24 - 17_____