| | | |
|---|---|---|
| AFZAL LOKHANDWALA, *et al.*, | | |
| Plaintiffs, | | Case No. 17-cv-5394 |
| v. | | |
| KFC CORPORATION, | | Judge John Robert Blakey |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

This diversity case arises out of a dispute over a franchise agreement between Defendant KFC Corporation and Plaintiff Afzal Lokhandwala, a KFC franchisee. Plaintiff[1] alleges that Defendant breached their agreement by unreasonably attempting to block him from telling customers that his KFC franchises offer Halal chicken.

Plaintiff amended his complaint in August 2017. [23]. Defendant moved to dismiss that complaint for failure to state a claim, [26], and then filed a counterclaim seeking declaratory and injunctive relief and attorney's fees, pursuant to the franchise agreement, [30]. Plaintiff moved to dismiss the counterclaim for failure to state a claim. [38]. For the reasons explained below, this Court grants both motions to dismiss.

## I.    The Complaint's Allegations

Plaintiff owns and operates eight KFC franchises in Illinois. [23] ¶ 1. He

---

[1] Lokhandwala's KFC franchises appear on the docket as Plaintiffs, but this Court refers only to "Plaintiff" in the opinion for easier reading, since Lokhandwala represents his franchises' interests.

opened his first franchise in 2002, at which point he entered into a franchise agreement with Defendant. *Id.* ¶ 21. Plaintiff opened his second franchise in 2006 and his third in 2010 before expanding to eight total franchises in 2012. *Id.* ¶ 25. Each franchise operates under an identical franchise agreement. *Id.* ¶ 9.

Plaintiff says he identified selling Halal chicken as a lucrative business opportunity as early as 2002, when he opened his first franchise. *Id.* ¶ 19. "Halal" refers to food prepared in accordance with Islamic laws and customs. *Id.* When Plaintiff discussed selling Halal chicken in 2002, Defendant's Franchise Director, Ken Taft, promised Plaintiff that Defendant would approve him selling Halal chicken. *Id.* ¶¶ 17, 20. Taft confirmed in a 2016 email to Plaintiff that "KFCC did indeed approve the use of Halal chicken." *Id.* ¶ 22.

Thus, with Defendant's "full knowledge and approval," Plaintiff started marketing and selling Halal chicken in his original franchise after Taft helped him find a Halal-certified (and KFC-approved) poultry processor. *Id.* ¶ 23. Plaintiff says that several of Defendant's executives "regularly" visited his first franchise and knew that he sold Halal chicken. *Id.* ¶ 24. Selling Halal chicken proved quite lucrative—so lucrative that Plaintiff selected the locations for the five franchises he opened in 2012 because of their proximity to Muslim communities. *Id.* ¶¶ 25, 27.

From 2003 through early 2017, all of the chicken-on-the-bone (as distinct from other chicken products, like chicken tenders) that Plaintiff's stores sold came from Halal-certified poultry processors that KFC approved. *Id.* ¶ 29. At present, 75 percent of Plaintiff's chicken-on-the bone comes from Halal-certified processors. *Id.*

Consistent with both Illinois law on Halal foods and Islamic rules, Plaintiff's franchises separate Halal and non-Halal products from each other and inform customers that they sell both Halal and non-Halal products. *Id.* ¶ 115.

Plaintiff always bought his chicken-on-the-bone from processors that the Islamic Society of Washington Area (ISWA) certified as Halal-compliant. *Id.* ¶¶ 34, 35. From 2003 through October 2016, multiple processors gave Plaintiff copies of their annual ISWA certificates confirming their Halal certifications. *Id.* ¶ 36. Plaintiff says that, from 2003 until late 2016 or early 2017, Defendant approved the sale of Halal chicken in Plaintiff's stores, helped him find Halal-certified processors and distributors, and allowed him to obtain the annual ISWA certificates. *Id.* ¶ 41.

In late 2016 or early 2017, however, Defendant changed course and demanded that Plaintiff stop marketing his products as Halal. *Id.* ¶ 49. Defendant made this demand based upon a 2009 KFC policy that prohibits franchisees from making religious dietary claims about KFC products. *Id.* The policy explains that KFC restaurants cannot offer Halal or Kosher foods for two reasons: (1) people have different interpretations of what satisfies the corresponding processing requirements; and (2) Defendant cannot certify that restaurant preparation and cooking processes would not lead to cross-contamination between the Halal and non-Halal (or Kosher and non-Kosher) foods. [27-2].

Plaintiff says that this policy contradicts the representations that Defendant made to him when he opened stores in 2010 and 2012, and runs contrary to Defendant allowing him to continue advertising Halal products in his stores after

the 2009 policy took effect. [23] ¶ 51. In fact, Plaintiff says that Defendant failed to disclose the policy during negotiations for Plaintiff to open new franchises in 2012, and then approved Plaintiff's request to offer Halal gravy in his stores. *Id.* ¶¶ 58, 63. Also, the franchise agreement does not mention the policy. *Id.* ¶ 50.

When Defendant ordered Plaintiff to stop marketing his products as Halal, Defendant also told Plaintiff to remove signs from his stores that disclosed the Halal status, names, and addresses of Plaintiff's chicken processors and distributors. *Id.* ¶¶ 73, 76. Plaintiff believes that Illinois regulations require him to post such signs because he certified his franchises as Halal Registered Brokers with the Illinois Department of Agriculture in 2017. *Id.* ¶¶ 72, 73.

## II.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a

sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating a complaint, this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On a motion to dismiss, this Court may consider the complaint itself, documents attached to the complaint, documents central to the complaint and to which the complaint refers, and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436.

The legal standard articulated here also applies to a motion to dismiss a counterclaim. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

III.   **Analysis**

 A.   **Defendant's Motion to Dismiss**

Plaintiff asserts three claims: declaratory and injunctive relief concerning his rights under the franchise agreement (Count I); breach of contract (Count II); and promissory estoppel (Count III). Defendant seeks to dismiss all three claims, arguing that the valid franchise agreement entitles Defendant to control how Plaintiff markets products at his KFC franchises. This Court addresses the first two claims in tandem before turning to the promissory estoppel claim.

As a preliminary matter, the franchise agreement contains a choice-of-law provision requiring that Kentucky law govern any disputes about the agreement. [27-1][2] § 20.8. Under Illinois law, which this Court follows on choice-of-law issues when sitting in diversity, a court honors a contract's choice-of-law provision as long as the parties have a valid contract. *See Medline Indus. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 861–62 (N.D. Ill. 2002). Because this Court has no reason to doubt the franchise agreement's validity, as discussed below, Kentucky law controls here.

### 1. Counts I and II: Declaratory and Injunctive Relief and Breach of Contract

Together, Counts I and II allege that Defendant violated the franchise agreement by unreasonably barring Plaintiff from marketing Halal products in his stores, and ask this Court to order that Plaintiff may represent to customers that he sells Halal products. [23] ¶¶ 91–125. Defendant argues that the franchise agreement's plain language gives Defendant "the absolute right" to approve or prohibit any advertising or promotional claims regarding KFC products. *See* [27] at 7. This Court agrees.

Under Kentucky law, in the absence of any ambiguity, courts must enforce a contract strictly according to its terms and must give those terms their ordinary meaning. *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (citing *Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 687 (Ky. 2012)). Also, Kentucky courts construe a contract holistically, "giving effect to

---

[2] For clarity, this Court cites to the copy of the franchise agreement that Defendant attached to its motion. [27-1]. Plaintiff attached a copy of the franchise agreement to his amended complaint, but he combined the agreement with numerous other documents in one exhibit. *See* [23-2].

all parts and every word in it if possible." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384–85 (Ky. Ct. App. 2002). Put differently, Kentucky law favors interpretations that do not render parts of a contract superfluous. *JSC Terminal, LLC v. Farris*, No. 5:10-cv-00040-R, 2010 WL 2178512, at *3 (W.D. Ky. May 27, 2010) (citing *City of Louisa v. Newland*, 705 S.W.2d 916, 918 (Ky. 1986)).

In relevant part, the franchise agreement provides:

- "Franchisee will strictly comply with the requirements and instructions of KFC regarding the use of the trademarks, trade names and service marks in connection with the Approved Products and the Outlet." [27-1] § 3.7.
- "Franchisee will take such action and precautions as necessary to assure that: (h) only signs and menuboards, advertising and promotional material, equipment," and other supplies "which meet KFC's standards and specifications (as established from time to time) are used at the Outlet or in connection with its business." *Id.* § 5.3(h).
- "No failure, forbearance, neglect or delay of any kind or extent on the part of KFC in connection with" enforcing and exercising rights under the franchise agreement "shall affect or diminish KFC's right to strictly enforce and take full benefit of each provision of this Agreement at any time." *Id.* § 20.4.
- "No custom, usage, concession or practice with regard to this Agreement, the Franchisee or KFC's other Franchisees shall preclude at any time the strict enforcement of this Agreement (upon due notice) in accordance with its literal terms." *Id.*
- "No waiver by KFC of any performance of any provision of this agreement shall constitute or be implied as a waiver of KFC's right to enforce such provisions at any future time." *Id.*
- "This Agreement constitutes the [parties]' entire understanding and agreement" and "supersedes all prior and contemporaneous understandings and agreements of the parties." *Id.* § 20.5.

Section 3.7 instructs Plaintiff to "strictly comply" with Defendant's requirements, while section 5.3(h) plainly gives Defendant control over advertising and promotional material. Moreover, section 20.4's waiver provisions make clear that Defendant can enforce the franchise agreement at any time, regardless of any

past failures to enforce or past contradictory practices. Lastly, section 20.5 specifically provides that the franchise agreement constitutes the parties' complete agreement and supersedes any other agreements between the parties. This Court sees no ambiguity in the franchise agreement, and thus must construe it strictly according to the ordinary meaning of its terms. *Ky. Shakespeare Festival*, 490 S.W.3d at 694. Under the franchise agreement, Defendant has every right to bar Plaintiff from advertising his products as Halal, even if Defendant allowed that advertising in the past.

Plaintiff argues that, because the contract is either silent or ambiguous as to whether he may make "truthful disclosures" about Halal products that he obtains from Halal-certified suppliers, this Court should consider extrinsic evidence regarding the parties' past conduct. [39] at 10. In Plaintiff's view, Defendant "can no more prohibit" him from disclosing that he offers Halal products "than it can prohibit him from explaining that breast meat is white and wing meat is dark." *Id.* Here, Plaintiff suggests that he seeks only the ability to answer occasional customer questions about Halal products, just as he could answer customer questions about whether wings contain dark meat. But Plaintiff's own declaration states that he has "marketed" Halal products since he opened his first franchise in 2002; the declaration also attributes $1,000,000 in gross annual revenue from four of his franchises to selling (and advertising) Halal foods. [23-3] ¶¶ 16, 34. And Plaintiff's complaint characterizes his actions as "advertising" Halal products. *See, e.g.*, [23] ¶ 55. The franchise agreement unambiguously entitles Defendant to control

8

Plaintiff's advertising or marketing at his franchises. [27-1] §§ 3.7, 5.3(h).

That said, Plaintiff's argument above implies that truthful statements cannot constitute advertising. Not so. "Advertising" means attracting the public's attention to something, usually to sell that something. Advertisements often contain truthful statements, such as a product's dimensions. The fact that Plaintiff truthfully described his chicken products as Halal when he marketed them does not remove those communications from the advertising realm that Defendant unambiguously has complete control over, per the franchise agreement. Besides, courts regularly uphold merger or integration clauses like section 20.5 and accordingly refuse to consider extrinsic evidence meant to contradict the writing. *See, e.g.*, *Papa John's Int'l, Inc. v. Dynamic Pizza, Inc.*, 317 F. Supp. 2d 740, 745 (W.D. Ky. 2004) (citing *KFC Corp. v. Darsam Corp.*, 543 F. Supp. 222 (W.D. Ky. 1982)); *Krol v. Siegel*, No. 15-cv-6364, 2016 WL 1020579, at *5 (N.D. Ill. Mar. 15, 2016) (applying Kentucky law and also citing *Darsam*). Given the franchise agreement's unambiguous language on advertising and its integration clause, this Court likewise declines to consider any extrinsic evidence.

Extrinsic evidence aside, Plaintiff also argues that Defendant's refusal to allow him to display signs about his Halal offerings and suppliers forces him to violate Illinois regulations about Halal food transparency; thus, he says he needs declaratory relief. *See, e.g.*, [23] ¶¶ 73, 85, 105 (citing Ill. Admin. Code tit. 8, § 190.90). Plaintiff misinterprets the Halal regulations. True, a "dealer" must comply with applicable provisions of the Illinois Halal Food Act. § 190.90. But

Illinois defines "dealer" as "any establishment that advertises, represents, or holds itself out" as "selling, preparing, or maintaining" Halal food. Ill. Admin. Code tit. 8, § 190.10. In other words, if Plaintiff ceases advertising his products as Halal, the Illinois regulations about Halal foods no longer apply to him.

Finally, Plaintiff claims that Defendant breached the contract by making *unreasonable* demands that he stop marketing his products as Halal. *See* [39] at 7. According to Plaintiff, the franchise agreement's recital clause and the introduction to section 5.3 apply reasonableness requirements to Defendant's actions. In relevant part, those provisions read:

- The franchise agreement "places detailed and substantial obligations on the Franchisee including strict adherence to KFC's *reasonable* present and future requirements regarding menu items, advertising, physical facilities, etc." [27-1] § 2 (emphasis added).
- "During the License Term, the Franchisee will strictly comply with all *reasonable* standards, specifications, processes, procedures, requirements, and instructions of KFC regarding the operation of the business which now exist or may be established from time to time, *and* the Franchisee will take such action and precautions as necessary to assure that: . . . ." *Id.* § 5.3 (emphasis added).

This Court disagrees with Plaintiff's contract interpretation. Although this Court ordinarily must credit a plaintiff's allegations on a motion to dismiss, *Iqbal*, 556 U.S. at 678, contract interpretation presents a question of law, *E.T. Prods., LLC v. D.E. Miller Holdings, Inc.*, 872 F.3d 464, 467 (7th Cir. 2017). This Court does not automatically accept a complaint's legal conclusions. *Brooks*, 578 F.3d at 581.

Kentucky law instructs this Court to interpret the franchise agreement by giving effect to as much of the contract as possible without rendering portions of it superfluous. *See Cantrell Supply*, 94 S.W.3d at 384–85; *JSC Terminal*, 2010 WL

10

2178512, at *3. Section 5.3 has 21 subsections, eight of which contain the words "reasonable" or "reasonably." [27-1] §§ 5.3(b), (c), (i), (j), (k), (o), (s), (t). Notably, section 5.3(h), pertaining to advertising, contains no "reasonable" language. Construing section 5.3's introductory language about "reasonable standards" to apply to every subsection would render the eight uses of "reasonable" or "reasonably" superfluous, contradictory to how Kentucky law directs this Court to interpret the contract. *See JSC Terminal*, 2010 WL 2178512, at *3. Besides, the "and" between the first and second clauses in section 5.3 indicates that the first clause provides only a general instruction to Plaintiff and does not modify the 21 subsections.

As for the recital in section 2, its unambiguous language indicates that it does not provide an exhaustive list of Plaintiff's obligations under the franchise agreement. The pertinent part of section 2 ends with "etc.," indicating that unlisted obligations exist. And that section begins by saying that the franchise agreement places many obligations on Plaintiff, "*including*" adhering to Defendant's "reasonable present and future requirements." [27-1] § 2 (emphasis added). "Including" here essentially means "including, but not limited to." Without expressing any view on whether Defendant acted reasonably by instructing Plaintiff not to advertise his products as Halal, this Court finds that the franchise agreement does not impose any specialized, overarching reasonableness requirement to Defendant's decisions about advertising.

After strictly construing the franchise agreement in accordance with

11

Kentucky law, *Ky. Shakespeare Festival*, 490 S.W.3d at 694, this Court finds that the franchise agreement unambiguously authorizes Defendant to control Plaintiff's advertising in the manner alleged here. Thus, this Court dismisses Counts I and II with prejudice.

### 2. Count III: Promissory Estoppel

Count III alleges that this Court must enforce Defendant's promises that Plaintiff could sell and market Halal foods, given Plaintiff's reasonable reliance upon Defendant's promises and Defendant's longstanding custom of not enforcing the 2009 policy against Plaintiff. [23] ¶¶ 126–37. This claim fails because Kentucky law does not allow promissory estoppel claims when the parties have a valid contract. *See, e.g.*, *Nash-Finch Co. v. Casey's Foods, Inc.*, No. 6:15-cv-00086-GFVT, 2016 WL 7106395, at *8 (E.D. Ky. Dec. 5, 2016) (explaining that promissory estoppel does not "give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract"); *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006) (predicting the Kentucky Supreme Court's holding based upon the "widely accepted principle" that promissory estoppel applies "only in the absence of an otherwise enforceable contract").

Even though Plaintiff pleads promissory estoppel "in the alternative," his claim fails because he never alleges that the parties lack a valid contract. In fact, his complaint acknowledges that a valid contract (the franchise agreement) exists between the parties, [23] ¶¶ 8–9, and his other two claims depend entirely upon the franchise agreement's validity. Thus, Plaintiff cannot succeed on a promissory

12

estoppel claim, and this Court dismisses Count III with prejudice. *See Nash-Finch*, 2016 WL 7106395 at *8.

### B.     Plaintiff's Motion to Dismiss

Defendant's counterclaim seeks declaratory and injunctive relief concerning its rights under the franchise agreement to enforce the 2009 no-Halal policy. [30] at 50–51. Defendant also alleges that section 20.3 of the franchise agreement entitles it to collect attorney's fees. *Id.* at 51. Plaintiff argues that Defendant's counterclaim fails because it presents issues already before this Court and because section 20.3 does not apply here. [39] at 20. This Court agrees.

When a counterclaim "merely restates an issue already before this Court," this Court should strike or dismiss the "repetitious and unnecessary" pleading. *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005); *see also Marlow Indus., Inc. v. Sealy, Inc.*, No. 5:17-056-DCR, 2017 WL 3319377, at *2 (E.D. Ky. Aug. 3, 2017) (dismissing a counterclaim under the "mirror image rule" because the counterclaim and complaint had "complete identity of factual and legal issues"). The mirror image rule fits this case to a T. Plaintiff's complaint sought "a declaration of the contract's meaning," so Defendant's counterclaim "seeking to enforce the contract is repetitious and unnecessary." *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.3d 1375, 1379 (7th Cir. 1985).

Defendant argues that its request for attorney's fees under the franchise agreement sufficiently distinguishes the counterclaim from Plaintiff's complaint to allow the counterclaim to proceed. [41] at 13. Setting aside the legal merits of that

argument, the request for attorney's fees cannot save the counterclaim because section 20.3 plainly does not allow Defendant to collect attorney's fees here. Section 20.3 provides: "If KFC *institutes* and prevails entirely in any action at law or in equity against the Franchisee," based at least in part upon the franchise agreement, then "KFC shall be entitled to recover, in addition to any judgment entered in its favor, reasonable attorney's fees." [27-1] § 20.3 (emphasis added). That provision contains no ambiguities, so this Court must construe it strictly and must assign its terms their ordinary meanings. *Ky. Shakespeare Festival*, 490 S.W.3d at 694. To recover attorney's fees, KFC must institute, or start, the action. [27-1] § 20.3. KFC did not start this action; Plaintiff did when he filed his original complaint. Thus, KFC cannot recover attorney's fees here. This Court dismisses Defendant's counterclaim with prejudice.

## IV. Conclusion

This Court grants Defendant's motion to dismiss [26] with prejudice and grants Plaintiff's motion to dismiss [38] with prejudice. All dates and deadlines are stricken. Civil case terminated.

Dated: January 23, 2018

Entered:

John Robert Blakey
United States District Judge

14